IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

JENNIFER MEYER and JONATHAN
MEYER,

              Plaintiffs,

     v.

PHH MORTGAGE CORPORATION,
TITLE RESOURCES GROUP
SETTLEMENT SERVICES, LLC d/b/a
CONVENIENT CLOSING SERVICES,
and FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

              Defendants.

---

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 16-2255(JBS/JS)

**OPINION**

APPEARANCES:

Mark Gregory Carusillo, Esq.
9 Cooper Avenue, First Floor
Marlton, NJ 08053
     Attorney for Plaintiffs

Casey Gene Watkins, Esq.
Christopher Neal Tomlin, Esq.
Daniel J.T. McKenna, Esq.
Ballard Spahr, LLP
210 Lake East Drive, Suite 200
Cherry Hill, NJ 08002
     Attorney for Defendants PHH Mortgage Corporation & Federal
     National Mortgage Association

Elizabeth Callahan Flanagan, Esq.
Purcell, Mulcahy, O'Neill & Hawkins, LLC
One Pluckemin Way
P.O. Box 754
Bedminster, NJ 07921
     Attorney for Defendant Title Resource Group Settlement
     Services, LLC d/b/a Convenient Closing Services

**SIMANDLE, Chief Judge:**

## I.   INTRODUCTION

This action arises from a December 2007 refinancing of a residential mortgage loan. Plaintiffs Jennifer and Jonathan Meyer allege that they have been unable to refinance their mortgage because Defendants PHH Mortgage Corporation and Title Resource Group Settlement Services failed to properly subordinate an existing mortgage with a third party before executing their 2007 loan, and failed to disclose this fact for nearly six years. Presently before the Court are two motions to dismiss by Defendants PHH Mortgage Corporation, the Federal National Mortgage Association, and Title Resource Group Settlement Services. For the reasons set forth below, the Court will grant Defendants' motions.

## II.   BACKGROUND[1]

Plaintiffs Jennifer and Jonathan Meyer allege that they obtained a refinance mortgage ("the Mortgage" or "the PHH Mortgage") from Defendant PHH Mortgage Corporation ("PHH") on

---

[1] The facts alleged are drawn from Plaintiffs' Complaint [Docket Item 1-1], exhibits attached to the Complaint, or undisputedly authentic documents upon which Plaintiffs explicitly rely in their Complaint. See City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998) ("When deciding a motion to dismiss, it is the usual practice for a court to consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."). For purposes of this motion, the Court must accept Plaintiffs' factual allegations as true.

their Mt. Laurel, New Jersey, home on or about December 26, 2007. (Compl. ¶ 5.) Title Resource Group Settlement Services, LLC ("TRG") was the closing agent for the PHH Mortgage. (Id. ¶ 6.) According to Plaintiffs, a condition precedent to the mortgage agreement was that TRG "would cause a superior Mortgage recorded in the Public Records against the Plaintiffs' residence, held by E*TRADE ["the E*TRADE Mortgage"] to be subordinated of record and thereby inferior and subordinate to the lien of the PHH Mortgage." (Id. ¶ 7.) Both PHH and TRG confirmed to Plaintiffs that all conditions precedent had been met before the Mortgage was executed; PHH then funded the Mortgage and TRG closed the mortgage transaction and disbursed the loan funds. (Id. ¶ 8.) The PHH Mortgage was duly recorded on January 25, 2008 "in ER Book 29, Page 97." (Id. ¶ 5.)[2] However, it appears that the E*TRADE Mortgage was never subordinated, as Plaintiffs contend the terms of their mortgage agreement required. (Id. ¶ 9.)

In 2010, Plaintiffs attempted to refinance the PHH Mortgage. (Id. ¶ 10.) Despite an initial offer to refinance the loan, PHH denied Plaintiffs' application for a new mortgage and informed Plaintiffs that they should re-apply for another refinance mortgage a few years later. (Id. ¶ 11.) Plaintiffs

---

[2] The PHH Mortgage was assigned in December of 2015 to Fannie Mae. (Id. ¶ 21.)

assumed they were denied because their "financial and/or credit profiles had been insufficient." (Id. ¶ 10.)

Plaintiffs attempted to refinance the PHH Mortgage in January of 2013 for a second time. (Id. ¶ 12.) Again, PHH allegedly agreed to refinance the Mortgage, but ultimately failed to close the loan and for the first time advised Plaintiffs "that the E*TRADE Mortgage had not been subordinated in connection with the 2007 PHH Mortgage obtained by Plaintiffs." (Id. ¶ 13.) According to Plaintiffs, this was the first they learned that the E*TRADE Mortgage was not subordinated of record. (Id. ¶ 13.) Plaintiffs contend that they have "acted diligently at all times in their business dealings with Defendant PHH and E*Trade," but E*TRADE has refused to subordinate its mortgage to the 2007 PHH Mortgage and they have been unable to refinance the PHH Mortgage at a lower interest rate because of the existing encumbrance. (Id. ¶¶ 14-15.)

Plaintiffs filed the instant lawsuit on April 21, 2016 in the Superior Court of New Jersey, Burlington County, which Defendants PHH and the Federal National Mortgage Association ("Fannie Mae") timely removed the case to this Court. [Docket Item 1.] Plaintiffs bring breach of contract, breach of contract – third party beneficiary, New Jersey Consumer Fraud Act, and

negligence claims against PHH, Fannie Mae, and TRG.[3] Defendants PHH and Fannie Mae [Docket Item 11] and TRG [Docket Item 12] now move to dismiss the Complaint for failure to state a claim upon which relief may be granted. These motions are now fully briefed and the Court will decide them without holding oral argument pursuant to Fed. R. Civ. P. 78.

## III. STANDARD OF REVIEW

Pursuant to Rule 8(a)(2), Fed. R. Civ. P., a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not required, and "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted). While a complaint is not required to contain detailed factual allegations, the plaintiff must provide the "grounds" of his "entitle[ment] to relief", which requires more than mere labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., may be granted only if, accepting all well-pleaded allegations

---

[3] This Court has federal question jurisdiction over Plaintiffs' claims against FNMA as a federal chartered corporation under 12 U.S.C. § 1717(a)(2)(B) and the National Housing Act, 12 U.S.C. § 1723a(a). This Court exercises supplemental jurisdiction over Plaintiffs' claims against PHH and TRG, 28 U.S.C. § 1367(a).

in the complaint as true and viewing them in the light most
favorable to the plaintiff, a court concludes that the plaintiff
failed to set forth fair notice of what the claim is and the
grounds upon which it rests. Id. A complaint will survive a
motion to dismiss if it contains sufficient factual matter to
"state a claim to relief that is plausible on its face."
Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Although a court
must accept as true all factual allegations in a complaint, that
tenet is "inapplicable to legal conclusions," and "[a] pleading
that offers labels and conclusions or a formulaic recitation of
the elements of a cause of action will not do." Id. at 678.

     In addition, Rule 9(b), Fed. R. Civ. P., imposes a
heightened pleading standard on fraud-based claims, requiring a
party to "state the circumstances constituting fraud with
particularity." Klein v. Gen. Nutrition Companies, Inc., 186
F.3d 338, 344 (3d Cir. 1999); see also Frederico v. Home Depot,
507 F.3d 188, 202-03 (3d Cir. 2007) (applying Fed. R. Civ. P.
9(b) to an NJCFA claim). To satisfy this standard, the plaintiff
must "plead the date, time, and place of the alleged fraud, or
otherwise inject precision into the allegations by some
alternative means." In re Riddell Concussion Reduction Litig.,
77 F.Supp.3d 422, 433 (D.N.J. 2015). This requirement is
intended "to place the defendants on notice of the precise
misconduct with which they are charged." Seville Indus. Mach.

Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir.
1984).

## IV.  DISCUSSION

### A. Statute of Limitations

First, Defendants seek to dismiss the Complaint because
Plaintiffs' claims are time-barred by the applicable six-year
statute of limitations. Ordinarily, statutes of limitations
arguments are raised as affirmative defenses in the answer to a
complaint. See Fed. R. Civ. P. 8(c). However, if "the time
alleged in the statement of a claim shows that the cause of
action has not been brought within the statute of limitations,"
a statute of limitations defense may be made in the context of a
Rule 12(b)(6) motion. Schmidt v. Skolas, 770 F.3d 241, 249 (3d
Cir. 2014) (quoting Robinson v. Johnson, 313 F.3d 128, 135 (3d
Cir. 2012). A motion to dismiss under Rule 12(b)(6) on statute
of limitations grounds should be granted "where the complaint
facially shows noncompliance with the limitations period and the
affirmative defense clearly appears of the face of the
complaint." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d
1380, 1384 n. 1 (3d Cir. 1994). If the bar is not apparent on
the face of the complaint, then it may not afford the basis for
dismissal. Schmidt, 770 F.3d at 249.

Here, the parties agree that New Jersey's six-year
limitations period for contract claims governs this action, see

N.J.S.A. 2A:14-1, but dispute when the limitations period began to run on Plaintiffs' claims. As a general rule, a cause of action accrues, and the statute of limitations begins to run, when the alleged injury occurred. The discovery rule, however, functions to delay the beginning of the statutory limitations period "until the plaintiff discovers or in the exercise of reasonable diligence should have discovered the basis for her claim against the defendant." Cunningham v. M & T Bank Corp., 814 F.3d 156, 162 (3d Cir. 2016). In other words, under the discovery rule, a cause of action does not accrue so long as the plaintiff is "reasonably unaware either that he has been injured, or that the injury is due to the fault or neglect of an identifiable individual or entity." Mancuso v. Neckles, 747 A.2d 255, 256 (N.J. 2000). "The purpose of this rule is not to permit every belated discovery to overcome the statute of limitations, but to limit its application to parties who could not have reasonably discovered they had a basis for an actionable claim." Lutzky v. Deutsche Bank Nat. Trust Co., Case No. 09-3886, 2009 WL 3584330, at *6 (D.N.J. Jan 27, 2009) (citing Burd v. New Jersey Tl. Co., 386 A.2d 1310, 1314 (N.J. 1978).

Defendants take the position that Plaintiffs' claims accrued in 2007, when the PHH Mortgage was executed and the E*TRADE Mortgage was not subordinated, and the discovery rule is inapplicable because at that time, Plaintiffs either knew or

should have known that the E*TRADE Mortgage had not been
subordinated. According to Defendants, the statute of
limitations on claims arising from this incident expired in
2013. Plaintiffs, on the other hand, argue that their claims did
not accrue until 2013, when they first learned of PHH and TRG's
alleged failure to subordinate the E*TRADE Mortgage. According
to Plaintiffs, their 2016 Complaint is timely because the
statute of limitations will continue to run on claims arising
from this incident until 2019.

The recording of a mortgage is a matter of public record.
N.J.S.A. 46:26A-2. Recording "a document affecting the title to
real property" has the effect of putting all those with an
interest in the property on notice "of the document recorded and
its contents." N.J.S.A. 46:26A-12; see also Cox v. RKA Corp.,
753 A.2d 1112, 1117 (N.J. 2000) (holding that "parties are
generally charged with constructive notice of instruments that
are properly recorded."). Like mortgage agreements,
subordination agreements must be recorded to have effect on
later creditors and are subject to the New Jersey statute of
frauds. See Metrobank For Sav., FSB v. National Community Bank
of New Jersey, 620 A.2d 433, 437 (N.J. App. Div. 1993).

Courts in this District have routinely found that the
discovery rule does not apply to claims arising from the terms
and execution of a mortgage, because plaintiffs could easily

have discovered their injury at the time the mortgage was executed. See Lutzky v. Deutsche Bank Nat. Trust Co., Case No. 09-3886, 2009 WL 3584330, at *6-*7 (D.N.J. Jan. 27, 2009) (finding the discovery rule inapplicable where "Plaintiffs could have discovered there was an actual claim through reasonable efforts during and around the time of the execution of the mortgage"); see also Coleman v. Deutsche Bank Nat. Trust Co., Case No. 15-1080, 2015 WL 2226022, at *6 (D.N.J. May 12, 2015) (same); Patetta v. Wells Fargo Bank, NA, Case No., 2009 WL 2905450, at 6 (D.N.J. Sept. 10, 2009) ("Plaintiffs' allegations concern the consummation of a refinance mortgage under false pretenses. . . . That Plaintiffs, with ordinary diligence, could have discovered they were the unfortunate victims of a nefarious and illegal predatory lending scheme precludes tolling under the discovery rule.") Because Plaintiffs' Complaint is based on actions (or, more aptly, inactions) allegedly taken in connection with the execution of a mortgage agreement, all of which were matters of public record, the Court finds that under New Jersey law the Plaintiffs are deemed to have had constructive notice and the discovery rule is inapplicable to these claims.

Plaintiffs allege in the Complaint that TRG was supposed to obtain a subordination agreement with E*TRADE and "and to have said subordination agreement recorded in the public records"

10

back in 2007. (Compl. ¶ 23.) Had the subordination agreement
actually been consummated, it would have become a matter of
public record and Plaintiffs would have been charged with notice
thereof. The logical corollary to this is that Plaintiffs should
have been aware, in 2007, that a subordination agreement with
E*TRADE had not been recorded when no such agreement appeared in
the public records. The discovery rule only delays accrual of a
cause of action so long as the plaintiff is "reasonably unaware"
of his injury. <u>Mancuso</u>, 747 A.2d at 256. Here, because
Plaintiffs' claim arises from matters of public record, they
cannot show that they were "<u>reasonably</u> unaware" of the fact that
the E*TRADE Mortgage was not subordinated of record as of 2007
or 2008. Accordingly, because Plaintiffs could have discovered
their injury through reasonable efforts in 2007, the discovery
rule is unavailable to them. Plaintiffs' claims are barred by
the statute of limitations, which expired in 2013.

   **B. Breach of Contract**

   In the alternative, even if Plaintiffs claims are timely,
Defendants contend that the four counts of the Complaint must
all be dismissed for failure to state a claim.[4]

---

[4] Defendants additionally argue that Fannie Mae should be
dismissed as a party to this case because the Complaint contains
no substantive allegations of wrongdoing by it. The Court
agrees. Rule 8 requires that a complaint contain "a short and
plain statement of the claim showing that the pleader is
entitled to relief" and "a demand for the relief sought." Fed.

Count One alleges that PHH breached its mortgage agreement with Plaintiffs "by failing to ensure that its Mortgage was recorded in first lien position against Plaintiffs' residence." (Compl. ¶ 18.) To state a claim for breach of contract under New Jersey law, "a plaintiff must show that (1) a valid contract existed, (2) that the defendant failed to perform under the contract, and (3) that failure to perform caused injury to the plaintiff." Webster v. Dollar General, Inc., -- F. Supp. 3d --, 2016 WL 3769748, at *9 (D.N.J. 2016). Defendants argue that Plaintiffs' breach of contract claim must fail because there is no contract between Plaintiffs and PHH that obligates PHH to subordinate the E*TRADE Mortgage. The Court agrees: despite Plaintiffs' allegations to the contrary, it is clear that there is no "express condition precedent to the granting of the Mortgage" (Compl. ¶ 7) that appears in either the Mortgage (Watkins Cert. Ex. A [Docket Item 11-3]) or the Note (Watkins Cert. Ex. B [Docket Item 11-4]),[5] the two written agreements at issue in this case, imposing on PHH the duty to subordinate any

---

R. Civ. P. 8(a)(2)-(3). Because Plaintiffs have not made any factual allegations against Fannie Mae from which the Court could find that it plausibly is liable for any of the four counts in the Complaint, all claims against Fannie Mae are dismissed.

[5] Because the PHH Mortgage is a document integral to the Complaint, and a recorded matter of public record, the Court may consider the authentic copy appended the Watkins Certification to PHH and Fannie Mae's motion to dismiss.

existing mortgage or lien on the property. Rather, the terms of
the Mortgage require the <u>Borrower</u> to "promptly discharge any
lien which has priority over this Security Instrument."
(Mortgage at 7-8.) PHH cannot have failed to perform an
obligation, or breached an agreement, that does not exist.

If any such agreement <u>did</u> exist between Plaintiffs and PHH,
outside the terms of the Mortgage and Note, Plaintiffs have not
adequately alleged its existence in this Complaint. Under New
Jersey's Statute of Frauds, any agreement "to transfer an
interest in real estate" -- which includes mortgages -- is
enforceable only if the agreement appears, with sufficient
detail, in writing, or if the existence and terms of the
agreement can be proved "by clear and convincing evidence."
N.J.S.A. 25:1-13. The allegations in the Complaint regarding the
existence of any agreement regarding subordination fall
significantly short of this requirement. Accordingly,
Plaintiff's claim for breach of contract will be dismissed.

### C. Third Party Beneficiary

Count Two alleges that TRG breached an agreement between
TRG and PHH "wherein Defendant TRG had agreed and obligated
itself to obtain a written subordination of the E*TRADE Mortgage
and to have said subordination agreement recorded in the public
records." (Compl. ¶¶ 23-24.) Plaintiffs assert a third party
beneficiary breach of contract claim on the basis of TRG's

13

alleged failure to secure subordination of the E*TRADE Mortgage.
Defendants argue that this claim should be dismissed because
Plaintiffs have not adequately alleged either the existence of
an agreement between TRG and PHH obligating one party to
subordinate the E*TRADE Mortgage, or Plaintiffs' third party
beneficiary status to any such agreement.

To substantiate a claim as a third party beneficiary, a
plaintiff must "show that the contract was made for the benefit
of that third party within the intent and contemplation of the
contracting parties." Grant v. Coca-Cola Bottling Co. of New
York, Inc., 780 F. Supp. 246, 248-49 (D.N.J. 1991) (citing First
National State Bank of New Jersey v. Commonwealth Federal
Savings and Loan Assoc., 610 F.2d 164, 170 (3d Cir. 1980)). "A
third-party who merely stands to benefit from a contract is no
more than an incidental beneficiary who incurs no contractual
right to enforce the contract." Id. (citing Restatement (Second)
of Contracts § 315 at 477 (1979)). "[T]he intention of the
parties to recognize a right of performance in the third party
is the critical factor that governs the characterization of the
beneficiary." Berel Co. v. Sencit F/G McKinley Assoc., 710 F.
Supp. 530, 537 (D.N.J. 1989).

Even assuming for the sake of argument that the Complaint
adequately alleged the existence of an agreement between TRG and
PHH requiring the subordination of the E*TRADE Mortgage,

14

Plaintiffs have not shown that any such agreement was made explicitly for their benefit such that they have standing to enforce it. Subordination agreements are agreements between creditors adjusting the priority order of liens on real property, and permitting a later lien to hold a position of priority over an earlier one. See Metrobank, 620 A.2d at 437; N.J.S.A. 12A:9-339. A subordination agreement has the effect of allowing a later creditor to be paid before an earlier one, in contrast to the ordinary priority rules established at N.J.S.A. 12A:9-322. As Defendants persuasively point out, it would plainly be in PHH's interest to have its security interest in Plaintiffs' home ranked above an existing mortgage lien, should Plaintiffs default on any obligations under the Note and Mortgage. While Plaintiffs have alleged an incidental benefit that might have accrued to them had the E*TRADE Mortgage been subordinated – they allege that they otherwise would have been eligible to refinance the PHH Mortgage at a lower interest rate – they have set forth no circumstances suggesting that PHH and TRG intended to subordinate the E*TRADE Mortgage primarily for Plaintiffs' benefit, rather than PHH's. Absent any allegations regarding PHH and TRG's intent to benefit Plaintiffs in agreeing to seek subordination of the E*TRADE Mortgage, the Court will not set aside the ordinary rules of contract law and presume that Plaintiffs, a non-party to any agreement between PHH and

15

TRG, have a right to seek damages under the contract. Accordingly, Plaintiffs' third party beneficiary claim will be dismissed.

### D. Consumer Fraud Act

Count Three asserts that PHH and TRG's failure to disclose to Plaintiffs that the E*TRADE Mortgage was not subordinated in December 2007 and PHH's assignment of the mortgage to Fannie Mae constitute unconscionable commercial practices under the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1 et seq.

The NJCFA makes unlawful "any unconscionable commercial practice, deception, fraud, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission" in connection with the sale of "any objects, wares, goods, commodities, services, or anything offered, directly or indirectly to the public for sale." N.J.S.A. §§ 56:8-1 & 2. To state a claim under the NJCFA, "a plaintiff must allege three elements: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal connection between the defendants' unlawful conduct and the plaintiffs' ascertainable loss." Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., 929 A.2d 1076, 1086 (N.J. 2007). Actionable unlawful conduct includes employing a misrepresentation, intentionally omitting a material fact, or

16

committing a regulatory violation. <u>Menkes v. Prudential Ins. Co. of America</u>, 762 F.3d 285 (3d Cir. 2014). The NJCFA is to be liberally construed in favor of consumers. <u>Gennari v. Weichert Co. Realtors</u>, 672 A.2d 1190, 1205 (N.J. 1996). Nonetheless, the NJCFA "is not intended to cover every transaction that occurs in the marketplace, but, rather, its applicability is limited to consumer transactions which are defined both by the status of the parties and the nature of the transaction itself." <u>Cetel v. Kirwan Fin. Group, Inc.</u>, 460 F.3d 494, 514 (3d Cir. 2006) (citing <u>Arc Networks, Inc. v. Gold Phone Card Co., Inc.</u>, 756 A.2d 636, 638 (N.J. Super. 2000)).

Plaintiffs have failed to adequately allege unlawful conduct by PHH or TRG to sustain a claim under the NJCFA. Here, Plaintiffs' NJCFA claim hinges on allegations that PHH and TRG knowingly omitted a material fact in the course of the PHH Mortgage transaction by failing to disclose that the E*TRADE Mortgage had not been subordinated.[6] This claim fails as a matter

---

[6] Plaintiffs additionally allege that PHH violated the NJCFA by assigning their mortgage to Fannie Mae, but this claim fails as a matter of law. New Jersey law permits PHH to make such an assignment; N.J.S.A. 46:9-9 provides that "All mortgages on real estate in this State, and all covenants and stipulations therein contained, shall be assignable at law by writing." Plaintiffs do not allege that this assignment violated their own rights in any way, and without any allegations concerning how they were harmed by PHH's assignment to Fannie Mae, the Court will not presume that such a lawful assignment constitutes an unconscionable trade practice. To the extent that Plaintiffs attempt to claim

of law because PHH and TRG had no duty to disclose this fact to Plaintiffs. "Implicit in the showing of an omission is the underlying duty on the part of the defendant to disclose what he concealed to induce the purchase." Arcand v. Brother Intern. Corp., 673 F. Supp. 2d 282, 298 (D.N.J. 2009). In New Jersey, a duty to disclose arises only: "(1) when there is a fiduciary relationship between the parties; (2) when one party expressly reposes trust in another party, or else from the circumstances, such trust is necessarily implied; and (3) when the relationship involving the transaction is so intrinsically fiduciary that a degree of trust and confidence is required to protect the parties." Argabright v. Rheem Mfg. Co., -- F. Supp. 3d --, 2016 WL 4402819, at *15 (D.N.J. Aug. 16, 2016) (citing Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1185 (3d Cir. 1993)). Plaintiffs' relationship with PHH and TRG fails to satisfy any of those circumstances. "The virtually unanimous rule is that creditor-debtor relationship rarely give rise to a fiduciary duty" requiring disclosure, United Jersey Bank v. Kensey, 704 A.2d 38, 44 (N.J. App. Div. 1997) (collecting cases), and Plaintiffs have not described circumstances from which this Court could infer a special level of trust between the parties.

---

that this assignment was unconscionable as to Fannie Mae, Plaintiffs do not have standing to do so.

Accordingly, Plaintiffs' consumer fraud claim fails as a matter
of law.

Moreover, even if PHH and TRG had a duty to disclose this
information to Plaintiffs and failed to do so, Plaintiffs have
insufficiently alleged that this conduct constitutes a violation
of the NJCFA.  Like all fraud-based claims, claims under the
NJCFA must satisfy Rule 9(b)'s heightened pleading standard. To
satisfy this, the plaintiff must "plead the date, time, and
place of the alleged fraud, or otherwise inject precision into
the allegations by some alternative means." In re Riddell
Concussion Reduction Litig., 77 F.Supp.3d at 433. There is
nothing "precise" about Plaintiffs' allegations here: Plaintiffs
aver only that "it was an express condition precedent" to the
PHH Mortgage deal that TRG would cause the E*TRADE Mortgage to
be subordinated of record, that both PHH and TRG represented to
Plaintiffs "that all conditions precedent to the granting of the
Mortgage had been met," and that the E*TRADE Mortgage was
ultimately not subordinated. (Compl. ¶¶ 7-9.) The Complaint
deprives the Defendants of notice as to who at their respective
companies allegedly knew of the promise to subordinate the
E*TRADE Mortgage; who knew, and when, that the E*TRADE Mortgage
was not subordinated; what, and when, Plaintiffs were told about
the subordination agreement and any other alleged conditions
precedent to the granting of the PHH Mortgage; and when

19

Plaintiffs attempted to refinance their loan, with whom at PHH they dealt, and what they were told when their two attempts were denied. For these reasons, Plaintiffs' NJCFA claim will be dismissed.

### E. Negligence

Finally, Count Four of the Complaint alleges that TRG owed, and breached, a duty to Plaintiffs "to act with reasonable care in securing the subordination of the E*TRADE loan." (Compl. ¶¶ 42-43.) Plaintiffs' negligence claim is barred by New Jersey's economic loss doctrine. This rule "bars a plaintiff from recovering purely economic losses suffered as a result of a defendant's negligent or otherwise tortious behavior, absent proof that the defendant's conduct caused actual physical harm to a plaintiff or his property." Ayala v. Assured Lending Corp., 804 F. Supp. 2d 273, 284 (D.N.J. 2011) (quoting Public Service Enter. Group, Inc. v. Philadelphia Electric Co., 722 F. Supp. 184, 193 (D.N.J. 1989)). Moreover, the doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from contract." RNC Systems, Inc. v. Modern Technology Group, Inc., 861 F. Supp. 2d 436, 451 (D.N.J. 2012).

Here, Plaintiffs' losses are plainly only economic damages: the only allegations of harm in the Complaint pertain to Plaintiffs' inability to refinance the PHH Mortgage at a lower

20

interest rate. Additionally, TRG owed Plaintiffs no legal duty, outside of any alleged contract between PHH and TRG, to ensure that the E*TRADE Mortgage was subordinated to the PHH Mortgage. "Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law" and "generally speaking, there is no general duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible harm to persons and tangible things." Saltiel v. GSI Consultants, Inc., 788 A.2d 268, 278 (N.J. 2002); see also Rivera v. Washington Mut. Bank, 637 F. Supp. 2d 256, 269 (D.N.J. 2009) ("Mere failure to fulfill obligations encompassed by the parties' contract . . . is not actionable in tort."). Plaintiffs have not pointed to any cases imposing on a financial services company an independent legal duty to subordinate an existing lien held by a third-party as part of a mortgage deal, and the Court has found none. After all, a borrower has no right to a subordination agreement among its creditors, and the New Jersey Legislature has made clear that subordination agreements may only be made "by a person entitled to priority." N.J.S.A. 12A:9-339. Because Plaintiffs' negligence claim is duplicative of its breach of contract claims, and because they claim to have suffered only economic losses, New Jersey law does not recognize their cause of action, and the Court will dismiss this claim.

21

**F. Leave to Amend**

The dismissal of the Complaint in its entirety will operate with prejudice. A court may deny leave to amend a complaint where it is apparent that "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." U.S. ex rel. Schumann v. Astrazeneca Pharma. L.P., 769 F.3d 837, 849 (3d Cir. 2014). In this case, because Plaintiffs' claims are legally insufficient, and not merely factually insufficient, any amendment would be futile. Accordingly, dismissal will be with prejudice.

**V.   CONCLUSION**

An accompanying Order will be entered.

 October 11, 2016                      s/ Jerome B. Simandle
Date                               JEROME B. SIMANDLE
                                   Chief U.S. District Judge

22